# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JENNIFER GAJEWSKI, Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-601 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CAPITAL ONE BANK (USA), N.A., | **Jury Trial Demanded** |
| Defendant. | |

Plaintiff Jennifer Gajewski (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

## NATURE OF ACTION

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully placing telephone calls to Plaintiff's and Class members' cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2. Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3. Defendant has also violated the Wisconsin Consumer Act ("WCA") by contacting Plaintiff and Class members at their places of employment without consent.

4. Plaintiff brings this action for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

5. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 28 U.S.C. § 1331; 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.). The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because the conduct at issue occurred in or was directed toward individuals in the state of Wisconsin. Plaintiff received automated telephone calls to her cellular telephone from Defendant after Plaintiff had revoked her consent for such calls. Defendant made automated telephone calls to cellular telephones, including Plaintiff's, that are assigned a Wisconsin-based telephone number. Defendant has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Wisconsin. Defendant does substantial business in Wisconsin.

7. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls/text messages to persons in this District and debt collection activities, occurred in this District.

## PARTIES

8. Plaintiff Jennifer Gajewski ("Gajewski") is an individual citizen of the State of Wisconsin, who resides in Oak Creek, Wisconsin.

9. Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in consumer credit transactions. Wis. Stat. § 421.301(10).

10. Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its primary place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491.

2

11. Capital One is engaged in the business of collecting debts owed to itself and others that were incurred for personal, family or household purposes.

12. The alleged debt that Capital One was attempting to collect from Plaintiff arose from alleged purchases on two of Plaintiff's personal credit card accounts: a Capital One credit card account ending in 4589 (the "Capital One Account") and a "Justice" branded credit card account ending in 8438 (the "Justice Account"). Capital One owns and services Justice-branded credit card accounts. *See* https://justice.capitalonecards.com/#/apply.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

13. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

15. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

16. The FCC has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or

3

over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are "calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

17. The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls...made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

18. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain **prior express written consent** from the recipient prior to making automated calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

19. The FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

20. In the same omnibus order, the FCC clarified "that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 29-30.

4

21. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

## THE WISCONSIN CONSUMER ACT
## CH. 421-427, WIS. STATS.

22. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2). The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state."

23. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); see also § 425.301. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

24. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies.

5

25. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. See Wis. Stats. § 427.104.

26. The Act also provides injured consumers with causes of action for statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. See Wis. Stats. §§ 426.110(1); § 426.110(4)(e).

27. Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

28. Consumers' WCA claims under Wis. Stat. § 427.104(1)(L) are analyzed using the same methods as claims under the FDCPA. While the Seventh Circuit has not squarely interpreted how WCA cases based upon the content of debt collection letters should be determined, federal courts in this District and the state courts in Wisconsin generally look to FDCPA case law for guidance. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

29. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id*.

30. Unlike the FDCPA, the WCA's debt collection provisions apply to original creditors who are attempting to collect their own debts. Wis. Stat. § 427.103(3) ("'Debt collector' means any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme,

6

intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.").

31. Original creditors, including Capital One, are debt collectors under the WCA. Wis. Stat. § 427.103; *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002) ("Unlike the [Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq.], the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector.").

32. The WCA also requires an award of reasonable attorney fees and costs to a prevailing plaintiff. Wis. Stat. § 425.308.

## FACTUAL ALLEGATIONS

33. At all times relevant, Gajewski is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

34. At all times relevant, Gajewski is, and at all times mentioned herein was, a "customer" as defined by Wis. Stat. § 421.301(17).

35. Gajewski originally provided her cellular telephone number, ending in 4933, to Capital One.

36. After Gajewski was unable to make payments on her Capital One and Justice Accounts, Capital One began calling Gajewski's cellular telephone repeatedly.

37. On February 23, 2017, Gajewski sent two letters by U.S. mail to Capital One. In the letters, Gajewski revoked consent to call Gajewski's cellular phone. A copy of the letter regarding the Capital One Account is attached as Exhibit A. A copy of the letter regarding the Justice Account is attached as Exhibit B.

38. On or around March 8, 2017, Plaintiff received a letter from Capital One. A copy of this letter is attached as Exhibit C.

7

39. Exhibit C is dated March 6, 2017, and states:

> Re: Account Ending in xxxxxxxxxxxx4589
> Case #: ████████1773
>
> Dear Jennifer Gajewski,
>
> Thanks for contacting us about your Capital One credit card account issued by Capital One®.
>
> We would be happy to research your request, but we need your account number to do so. We are unable to locate the number based on the information you sent us. To process your request, we need your name, address on file with Capital One, your current address (if different from what we have on file, please indicate if you would like us to change the address), account number, Social Security Number, date of birth, and the case ID that appears at the top of this letter.
>
> If you have any questions, please give us a call at 800-216-1013. Our customer service representatives will be happy to help you.

40. Upon information and belief, Exhibit C, the statement about "contacting us" (i.e. Capital One) refers to Exhibit A.

41. Capital One thus acknowledged receipt of Gajewski's revocation of consent to call her cellular phone.

42. In Exhibit C, Capital One states that it is "unable to locate the [account] number based on the information you sent us." This statement is nonsensical. The partial account number for the Capital One Account and Gajewski's name and address are printed on Exhibit C.

43. Capital One placed several additional telephone calls to Gajewski's cellular telephone after Capital One acknowledged receiving Exhibit A:

    a. April 2, 2017, 5:38 p.m.

    b. April 1, 2017, 3:47 p.m. and 9:12 a.m.

    c. March 30, 2017, 5:01 p.m.

    d. March 28, 2017, 6:39 p.m.

    e. March 14, 2017, 8:39 a.m.

    f. March 12, 2017, 2:32 p.m.

8

Case 2:17-cv-00601-JPS   Filed 04/27/17   Page 8 of 18   Document 1

g. March 11, 2017, 1:05 p.m.

h. March 10, 2017, 11:56 a.m.

i. March 9, 2017, 10:34 a.m.

j. March 8, 2017, 3:49 p.m.

k. March 7, 2017, 5:21 p.m.

l. March 6, 2017, 2:33 p.m.

m. March 5, 2017, 11:17 a.m.

n. March 4, 2017, 3:25 p.m. and 9:24 a.m.

o. March 2, 2017, 5:27 p.m.

44. The call history on Gajewski's cellular phone indicates that all of the calls listed above were made from the numbers 800-955-6000 and 866-953-7906. These telephone numbers belong to Capital One.

45. Upon information and belief, Capital One's records will show the date that Capital One actually received Exhibits A and B.

46. Capital One is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.").

47. All telephone contact by Capital One to Gajewski on her cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

48. Capital One maintains contact center software which connects to its telephony hardware that together constitutes a dialing system with the capacity to make telephone calls without human intervention; thus, it is an automatic telephone dialing system (ATDS).

9

49. The telephone calls to Gajewski's cellular telephone number, and to the class, were initiated using Capital One's contact center software.

50. Capital One's contact center software and dialing system has the capacity to dial from a database of stored telephone numbers either at random or in a sequence, either pre-set or determined by algorithm.

51. Upon information and belief, Capital One placed all of the calls to Gajewski and class members using its contact center software and dialing system, dialing from a database of stored telephone numbers either at random or in a sequence, either pre-set or determined by algorithm.

52. Capital One's contact center software and dialing system has the capacity to dial from a list of stored telephone numbers without human intervention.

53. Upon information and belief, Capital One placed all of the calls to Gajewski and class members using its contact center software and dialing system, dialing from a list of stored telephone numbers without human intervention.

54. All of the calls that Capital One initiated to Gajewski's cellular telephone number, and to the class, were initiated using software which has the capacity to predicatively dial.

55. Upon information and belief, and in light of the frequency, large number, nature, and character of the calls, Capital One placed its calls to Gajewski's and class members' cellular telephone numbers by using (a) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (b) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (c) hardware, that

10

Case 2:17-cv-00601-JPS   Filed 04/27/17   Page 10 of 18   Document 1

when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (d) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72 (adopted June 18, 2015 and released July 10, 2015).

56. The telephone number that Capital One used to contact Gajewski, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

57. On February 23, 2017, Gajewski revoked any "prior express consent" given to Capital One to place telephone calls or text messages to Gajewski's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A). Capital One acknowledged the revocation on March 6, 2017.

58. Capital One's telephone calls/texts to Gajewski's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

59. Capital One's calls and voicemails were sent to Gajewski's cellular phone utilizing an "automatic telephone dialing system" for non-emergency purposes and in the absence of Gajewski 's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

60. Under the TCPA, the burden is on Defendants to demonstrate that Capital One currently had prior express consent within the meaning of the statute.

61. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

62. Capital One also contacted Gajewski on her work telephone during business hours many times, after Gajewski told Capital One that Gajewski was not permitted to receive personal phone calls on her work phone.

63. On the phone calls to Gajewski, Capital One representatives attempted to collect the alleged debt from Gajewski.

64. The phone calls were not "solely to verify employment status or earnings," and Gajewski's employer did not have "an established debt counseling service or procedure." The calls were attempts to collect the alleged debt.

65. Capital One continued to call Gajewski at work to attempt to put undue pressure on Gajewski to pay the alleged debt to Capital One. Such conduct is inherently unfair, as the consumer is placed at risk for workplace discipline, up to termination, for repeated personal calls to the employer.

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***

66.     Gajewski incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

67.     The foregoing acts and omissions of Capital One constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

68.     In 2014, Capital One settled a TCPA class action with similar allegations for over $75 million. https://www.capitalonetcpaclasssettlement.com/.

69.     As a result of Capital One' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Gajewski and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

70.     Gajewski and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA and WCA by Capital One in the future. Gajewski and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.***

71.     Gajewski incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     The foregoing acts and omissions of Capital One constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

73. As a result of Capital One' violations of 47 U.S.C. § 227 *et seq.*, Gajewski and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Gajewski and Class members are also entitled to and do seek injunctive relief prohibiting Capital One' violation of the TCPA in the future.

75. Gajewski and Class members are also entitled to an award of attorneys' fees and costs.

### COUNT III -- WCA

76. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

77. Capital One continually contacted Gajewski at her workplace on her work telephone many times, even after Gajewski told Capital One that Gajewski was not permitted to receive personal phone calls on her work phone.

78. On the phone calls to Gajewski, Capital One representatives attempted to collect the alleged debt from Gajewski.

79. The phone calls were not "solely to verify employment status or earnings," and Gajewski's employer did not have "an established debt counseling service or procedure." The calls were attempts to collect the alleged debt.

80. Capital One continued to call Gajewski at work to attempt to put undue pressure on Gajewski to pay the alleged debt to Capital One. Such conduct is inherently unfair, as the consumer is placed at risk for workplace discipline, up to termination, for repeated personal calls to the employer.

81. Capital One violated Wis. Stat. §§ 427.104(1)(d) and 427.104(1)(h).

14

## CLASS ACTION ALLEGATIONS

82. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

83. Plaintiff defines a class, consisting of:

All persons within the United States who, between July 1, 2014 and April 27, 2017, received a non-emergency text message from or on behalf of Capital One to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and after Capital One received written correspondence from the person, including electronic means of correspondence, revoking consent to contact the person's cellular phone.

Plaintiff Gajewski represents, and is a member of, the Class. Excluded from the Class is Defendant Capital One and any entities in which Capital One or its parent company has a controlling interest; Capital One's agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

84. Gajewski does not know the exact number of members in the Class, but Gajewski reasonably believes that Class members number at minimum in the hundreds, if not thousands.

85. Gajewski and all members of the Class have been harmed by the acts of Capital One.

86. This Class Action Complaint seeks injunctive relief and money damages.

87. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Capital One and/or its agents.

88. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions

which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a.    Whether Capital One and/or its agents made non-emergency calls/texts to Gajewski's and Class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

    b.    Whether Capital One can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls and that consent was not revoked in writing;

    c.    Whether Capital One' conduct was knowing and/or willful;

    d.    Whether Capital One is liable for damages, and the amount of such damages; and

    e.    Whether Capital One should be enjoined from engaging in such conduct in the future.

89.    Gajewski asserts claims that are typical of each Class member. Gajewski will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

90.    Gajewski has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

91.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Capital One is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties

than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

92. Capital One has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Gajewski alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## JURY DEMAND

93. Gajewski hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA and WCA by Defendant in the future;

B. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff Gajewski seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff Gajewski seeks for herself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. As a result of Defendant's violations of Wis. Stat. §§ 427.104(1)(d) and 427.104(1)(h), Plaintiff Gajewski seeks for herself $1,000.00 in actual or statutory damages and $100,000.00 for the Class.

E. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

F. Injunctive relief, including an order enjoining Capital One from violating the TCPA and WCA in the future;

G. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

H. Such other relief as the Court deems just and proper.

Dated: April 27, 2017

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com